UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY BUSH an individual, | Case No. 2:20-cv-01241-KJM-EFB |
| Plaintiffs, | |
| v. | |
| BARRETT BUSINESS SERVICES, INC., a California Corporation; and does 1 through 10 inclusive | <u>ORDER</u> |
| Defendants. | |

**IT IS HEREBY STIPULATED AND AGREED**, by and among Plaintiff AMY BUSH ("Plaintiff") and Defendant BARRETT BUSINESS SERVICES, INC.("Defendant") (collectively, "the Parties"), by and through their respective counsel of record, that the entire District Court action entitled *Amy Bush, an individual v. Barrett Business Services, Inc., a California Corporation, et al.* (Case No: 2-20-cv-01241-KJM-EFB) (the "Action") shall be stayed pursuant to the Agreement to Arbitrate ("the Agreement"), executed by the Parties on December 28, 2015. A true and correct copy of the Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference.

1

**IT IS FURTHER STIPULATED AND AGREED**, by and between the Parties hereto, through their counsel of record, as follows:

1. The entire Action, under 9 U.S.C. § 3 and California Code of Civil Procedure section 1280 et seq., shall be immediately stayed and to binding arbitration.

2. This Court shall retain jurisdiction to enforce this Joint Stipulation to submit the matter to binding arbitration, and to confirm the arbitration award rendered therein.

3. The Parties agree that arbitration of the Action shall be venued in Sacramento, California.

4. The Parties shall mutually agree upon an arbitrator who has no less than five (5) years of experience in arbitrating employment issues and is located within fifty (50) miles of Plaintiff's place of employment with Defendant in Sacramento, California.

5. In the event that the Parties cannot agree on an arbitrator, then Plaintiff and Defendant shall each choose an arbitrator and agree that those two arbitrators shall confer and jointly designate a third arbitrator to arbitrate the claim. The chosen or designated arbitrator shall have no less than five (5) years of experience in arbitrating employment issues and shall be located within fifty (50) miles of Plaintiff's place of employment with Defendant in Sacramento, California.

6. The Parties agree that the arbitration proceeding will be governed by the Agreement and shall fully comply with the requirements of *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Ca1.4th 83, in that the arbitration shall: (a) provide a neutral arbitrator; (b) allow sufficient discovery; (c) provide all types of relief available to Plaintiff that otherwise would be available in court; (d) provide a written arbitration award given by the arbitrator; and (e) require that all arbitrator's fees and all costs unique to arbitration will not be paid by Plaintiff.

7. The Parties agree that the Arbitration shall occur pursuant to the California Code of Civil Procedure, except that the Federal Arbitration Act (9 U.S.C Section 1 ("FAA")) shall

apply where California law conflicts with the FAA. Disputes regarding the determination of the appropriate procedural law shall be decided by the Arbitrator.

8. The Arbitrator shall provide a written Arbitration Award to include the Arbitrator's findings and conclusions on which the award is based. The Arbitrator shall have the power to award any remedies, including attorneys' fees and costs, available under applicable law.

9. The Arbitrator's Award shall be final and binding. Judicial review shall be limited, as provided by law. The Parties shall be deemed to have consented that judgment upon the Arbitration Award may be entered in any federal or state court having jurisdiction thereof.

10. Plaintiff and Defendant shall each bear respective costs for legal representation during any such arbitration. Defendant shall bear the costs unique to the arbitration process. By signing this Stipulation, counsel of record for the Parties represent that they have full authority from their respective clients to enter into this Stipulation on behalf of their respective clients.

11. The Parties agree that this Stipulation may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Stipulation.

**IT IS SO STIPULATED.**

DATE:  September 8, 2020          CLINGO LAW

By: */s/ Jennifer A. Clingo [as authorized on 9/8/20]*
      JENNIFER A. CLINGO

      Attorney for Plaintiff
      AMY BUSH

DATE:  September 8, 2020          FISHER & PHILLIPS LLP

By: */s/ Megan E. Nevin*
      ALDEN J. PARKER
      MEGAN E. NEVIN

      Attorneys for Defendant
      BARRETT BUSINESS SERVICES, INC.

IT IS SO ORDERED.

Dated: September 17, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

# EXHIBIT A

# EXHIBIT A

# BARRETT BUSINESS SERVICES INC.
# EMPLOYMENT AGREEMENT

This Employment Agreement (hereinafter called "Agreement") is dated <u>December 1st, 2015</u>, and effective <u>December 28th, 2015</u>, between Barrett Business Services, Inc., a Maryland corporation (hereinafter called "Company"), and <u>Amy Bush</u>, (hereinafter called "Employee"). Company and Employee shall also be referred to collectively as the "Parties."

In consideration of the mutual promises and covenants exchanged between Company and Employee, the Parties hereto agree as follows:

1. **EMPLOYMENT**

Employee enters into an employment relationship with the Company in the capacity of <u>HR Consultant</u> whose principal duties shall be to <u>support the customer, the branch and BBSI as determined by the Area Manager and BBSI Senior Management Team</u>.

Employee shall also perform other related duties that may be assigned from time to time by Company's management.

2. **COMPENSATION**

Employee shall be paid a salary of <u>$93,500</u>, per annum, payable bi-weekly, plus participation in the Company's profit sharing program ("Program"), if eligible. Employee has had a meaningful opportunity to ask questions about the Profit Sharing Program, including its terms and conditions. Employee is satisfied that he or she understands the terms and conditions of the Program and therefore accepts such terms and conditions. Employee understands that the Program's definition, existence, and calculations are and will be determined at the sole discretion of the Company consistent with applicable law.

Each pay period is distinct and severable, and employment for any part of a pay period or a year shall not be deemed to entitle Employee to salary for more than the actual hours worked by Employee. The Employee's compensation will be prorated to the last date of employment. The Employee's compensation shall be governed by this Agreement and no other.

3. **PERFORMANCE OF DUTIES/RESTRICTIONS ON EMPLOYMENT**

Employee shall perform the work assignment in a careful, diligent, and good faith manner. Employee shall adhere to the business of the Company and shall engage in no other business venture on a full or parttime basis or perform any other business or employment activities during Company's normal business hours. While in the employ of Company, Employee agrees not to organize or engage, in any manner (directly or indirectly), in a business in competition with Company's business.

4. **AT-WILL EMPLOYMENT**

Employment under this Agreement is at-will and employment may be terminated by any party for any reason, with or without cause or notice, at any time. Nothing in this Agreement or in any oral or written statement shall limit the Company's right to terminate employment at-will. There is no promise of any sort, implied or otherwise, of employment for a specified or assumed amount of time. Nothing in this Agreement shall be construed to modify Employee's at-will status.

5. **EMPLOYEE DISCIPLINE**

The Company shall have the discretion and right to discipline Employee, including immediate termination, for any conduct of Employee determined by Company to constitute misconduct, including but not limited to the following examples:

    a.    Employee willfully and/or repeatedly refuses to comply with the policies, standards, and regulations of Company as established.



b.  Employee fails or refuses to faithfully or diligently perform under the provisions of the Agreement or the usual and customary duties which have been assigned to Employee from time to time.

c.  Employee commits fraud, dishonesty, or other act of misconduct in connection with rendering services for or on behalf of the Company.

Nothing in this section shall be deemed to be an exhaustive list of events subject to discipline nor shall it be deemed to modify the at-will employment under section 4.

## 6. BINDING AUTHORITY

Employee does not have the authority to bind the Company to the performance of any contract or action whatsoever without Company's written permission therefore.

## 7. DISCLOSURE OF INFORMATION

Employee is aware that Company is engaged in the business of recruiting and staffing personnel for Company's business accounts, and that he or she (as an employee of the Company) is engaged to perform services on a short or longterm basis to fulfill the needs of the Company accounts. Employee recognizes that the methods utilized by Company in the conduct of its business; the list of Company's accounts as they may exist from time to time, the Company's profit margins, recruiting methods and its inventory lists of employees (present and former) are valuable, special, and unique assets of the Company.

Employee will not, during the term of this Agreement or at any time thereafter, disclose any accounts or employee lists, special methods or any part thereof, business practices, or any other confidential or proprietary information to any person, firm, corporation or other entity for any reason or purpose whatsoever. Employee will not furnish to anyone or retain for personal use any documents or materials relating to the Company's business which were acquired while in the employ of Company and will return to Company immediately upon termination of this Agreement or upon termination of Employee's employment by Company, and all such documents and materials, including, but not limited to, correspondence, letters, manuals, contracts, reports, price lists, mailing lists, account lists, supplies lists, monies, supplies, employee lists, employee files, and all other Company material and records of any kind then in the possession of the Employee. Employee will not participate in any acts to induce any account or employee of the Company to do anything which might result in disadvantage to the Company.

In the event of a breach or threatened breach by the Employee of the provision of this Paragraph 7, Company shall be entitled to an injunction restraining Employee from disclosing, in whole or in part, any of such information or from rendering any services to any person, firm corporation or other entity to whom such confidential and/or proprietary information, in whole or in part, has been disclosed or is threatened to be disclosed. Nothing herein shall be construed as prohibiting Company from pursuing any other remedies available to Company for such breach or threatened breach, including the recovery of damages from Employee. The provisions of this paragraph shall survive any termination of this Agreement.

Nothing in this provision is intended to prohibit any employee from exercising their right to engage in any protected activities under the NLRA or from engaging or participating in discussions concerning their wages, benefits and other terms and conditions of employment with the Company.

## 8. NATURE OF EMPLOYER'S BUSINESS: EMPLOYEE'S COVENANTS

Company agrees to instruct and train Employee through special onthejob instruction when it is, at management's sole discretion, determined necessary and/or appropriate in order to develop him/her into a fully qualified and effective worker. Employee acknowledges that employment with the Company will, of necessity, provide him/her with specialized training and knowledge which, if used in competition with the Company, could cause serious economic harm to the Company. Employee further acknowledges that he/she will be placed in a close business and personal relationship with accounts and employees of the Company. Therefore, Employee agrees as follows:

a.  For a period of eighteen (18) months after Employee is no longer employed by Company, irrespective of the reason for termination of employment with the Company, Employee will not knowingly



or willfully, directly or indirectly, as proprietor, stockholder, partner, officer, employee or otherwise, divert or attempt to divert from Company, any customer of Company, or sell, offer to sell to, or solicit from any person, firm or other entity which was a customer of Company any business competitive with the business of Company.

For purposes of this section, the term "customer" shall mean (i) any person or entity who was a customer of the Company at any time during the oneyear period prior to the date of termination of Employee's employment, and (ii) any prospective customer to whom, during the one year prior to the date of termination of Employee's employment the Company had made an offer of services (not including advertisements and other generalized mailings made to a wide range of potential customers), or Employee had personally made an offer of services.

    b.     For a period of eighteen (18) months after Employee is no longer employed by Company, irrespective of the reason for termination of employment with the Company, Employee will not directly or indirectly, approach, counsel or attempt to induce any person who is then in the employ of the Company to leave the employ of the Company, or employ or attempt to employ any such person or any person who at any time during the preceding two weeks was in the employ of the Company. Employee further agrees not to aid, assist or counsel any other person, firm or corporation to do any of the acts mentioned in this subparagraph.

    c.     The parties hereto specifically agree that the scope (area and duration) of the restrictive covenants contained in subparagraphs 8a and b are fair and reasonable and are not broader as to areas and duration than are reasonably necessary for the protection of Company's business and do not impose undue hardship on Employee. If the provisions of subparagraphs 8a and b exceed the time the Employee was employed by the Company, then such period will be reduced to equal time Employee was employed by Company. With respect to and as used in subparagraphs 8a and b, the phrase "business competitive with the business of Company" refers to and includes all aspects of Company's business during the time of Employee's employment by Company.

If any of the terms of the covenants set forth in this paragraph 8 are deemed or determined to be too broad to be enforceable at law or otherwise, then the area and/or length of time (as the case may be) shall be reduced to such area and/or time (as the case may be) as a court or arbitrator of competent jurisdiction shall deem enforceable, and the parties hereto agree that the court or arbitrator shall enforce such periods and areas of restriction as deemed to be reasonable by said court even if more broadly stated herein. Compliance with the provisions of this paragraph 8 is a material condition to the Company's hiring and/or retaining the services of Employee. Employee further agrees to indemnify and hold harmless the Company from all damages, expenses and costs, including reasonable attorneys' fees, related to the Employee's breach of and/or Company's enforcement of any of the provisions of this Paragraph 8.

If the Employee violates any of the restrictive covenants contained in the Paragraph 8, and Company brings legal action for injunctive or other relief, Company shall not, as a result of the time involved in obtaining such relief, be deprived of the benefit of the full period of the restrictive covenants. Accordingly, the restrictive covenants contained in this Paragraph 8 shall be deemed to have the duration specified above, computed from the date such relief is granted but reduced by the time expired between the date the period of restriction began to run and the date of the first violation of the restrictive covenant. The covenants not to compete on the part of Employee contained in this Paragraph 8 shall be construed as an agreement independent of any other provision in this Agreement, and the existence of any claim or cause of action of the Employee against Company whether predicated on this Agreement or otherwise shall not constitute a defense to the enforcement by Company of such covenants not to compete. The provisions of this Paragraph 8 shall survive any termination of this Agreement.

9. <u>INJUNCTIVE RELIEF</u>

The parties agree that any breach or evasion of any of the material terms and conditions of this Agreement by Employee will cause immediate and irreparable injury to the Company, the exact extent of which may be difficult to ascertain in a monetary award, and therefore, Company may enforce its rights under this Agreement in any court of competent jurisdiction of specific performance or injunctive relief (including temporary restraining orders) in addition to any other rights, damages, or remedies Company



may have at laws or equity. The provisions of this paragraph shall survive any termination of this Agreement.

## 10. HEADINGS

The paragraph headings in this Agreement are inserted for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of the Agreement or any provisions thereof.

## 11. WAIVER

A waiver of any breach of the terms and conditions of this Agreement shall not be considered to be a modification of any provision nor shall such waiver act to bar the enforcement of any subsequent breach or be permanent or binding for the future.

## 12. NOTICES

All notices hereunder shall be in writing and delivered by hand or sent by certified mail. Mail for the Company shall be addressed to its principal office located at 8100 NE Parkway Drive, Ste. 200, Vancouver, WA 98662. Mail for Employee shall be directed to his/her last known address.

## 13. ARBITRATION

If an employment dispute arises between Employee and the Company, both Employee and the Company agree to submit any such dispute arising out of Employee's employment or the termination of such employment (including, but not limited to, claims of unlawful termination based on race, sex, age national origin, disability, breach of contract or any other bias prohibited by law) exclusively to binding arbitration. The arbitration shall occur pursuant to the laws of civil procedure addressing arbitration in the state in which the dispute arises (e.g. in California, Code of Civil Procedure Section 1280, et. seq.), except that the Federal Arbitration Act, 9 U.S.C., Section 1 (FAA) shall apply where state law conflicts with the FAA. Disputes regarding the determination of the appropriate procedural law shall be decided by the arbitrator.

Arbitration shall be the exclusive means of resolving any dispute arising out of Employee's employment or termination from employment by the Company and no other such action can be brought by Employee or the Company in any court. Employee and the Company hereby waive all rights to a civil court action (e.g. bench or jury trial) regarding employee's employment and the termination of Employee's employment with the Company; only the arbitrator, and neither a judge nor a jury, will decide the dispute.

If employee or the Company decide to dispute Employee's termination or any other incident or issue arising from Employee's employment with the Company, including but not limited to, unlawful discrimination or harassment, he/she/it must mail a written notice to the other party of his/her/its intention to arbitrate. Said notice must be transmitted within the time limit established by the applicable statute of limitations if the dispute involves statutory rights. If no statutory rights are involved, or if there is no applicable statute of limitation, the disputing party must transmit such notice to the other party within one (1) year from the date of termination, or one (1) year from the date on which the alleged incident(s) or conduct occurred. Any dispute over such issues shall be referred to the arbitrator. Delivery shall be by certified mail to the non-requesting party. The notice shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any, and the remedy sought.

Failure to request arbitration within the stated time will constitute a waiver of any right to raise any claims arising out of Employee's employment with the Company, including claims of unlawful discrimination or harassment, whether in arbitration or in any court or other forum.

Employee and the Company shall each bear respective costs for legal representation during any such arbitration. The cost of the arbitrator and court reporter, if any, shall be paid by the Company.

Both employee and the Company shall mutually agree upon an arbitrator subject to the qualifications below. In the event that Employee and Company cannot agree on an arbitrator, then Employee and the



BBSI Employment Agreement 052015    4

Company shall each choose an arbitrator and agree that those two arbitrators shall confer and jointly designate a third arbitrator to arbitrate the claim. The chosen or designated arbitrator will have no less than five (5) years of experience arbitrating employment issues, and will be located no more than 50 miles from your place of employment. The arbitrator shall have the power to award any remedies, including attorneys' fees and costs, available under the applicable law. The arbitrator shall provide a written arbitration award to include the arbitrator's findings and conclusions on which the award is based.

The arbitrator's award shall be final and binding. Judicial review shall be limited, as provided by law. The parties shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

Both employee and the Company shall be entitled to conduct adequate discovery, including oral and written discovery, to be governed by the applicable law consistent with the foregoing provisions of this Agreement.

14. PROVISIONS SEPARATE AND SEVERABLE

The Parties agree that if any provision contained in this Agreement is capable of two constructions, one of which would render the provision invalid and the other of which would render the provision valid, then such provision shall be construed so as to render it valid. The parties further agree that each and every provision of this Agreement, particularly, but not exclusively, Paragraph 8 in its entirety, is separate and severable. Accordingly, in the event any particular provision in this agreement shall be declared unenforceable by a court of competent jurisdiction, the parties agree that any and all other provisions in this Agreement shall be valid and subsisting, as though the parties had executed a further Agreement, excluding the particular provision(s) or condition(s) declared to be unenforceable.

15. RESTRICTIONS ON ASSIGNABILITY

Employee's rights and benefits under this Agreement are personal to Employee and may not be transferred or assigned, voluntarily or involuntarily. Subject to this limitation, this Agreement shall be binding upon and inure to the benefit of the parties, their heirs, devisees, personal representatives, successors and assigns.

16. ENTIRE AGREEMENT

This Agreement contains the entire understanding between the parties hereto. No modification or addition hereto shall be valid except by a writing signed by the parties hereto. This Agreement maybe executed simultaneously in several counterparts, each of which shall be deemed an original, but all of this together shall constitute one and the same instrument. Employee hereby acknowledges that he/she has been provided an opportunity to consult with his/her attorney prior to executing the Agreement. Employee further acknowledges that Employee has dully read and understands this Agreement, including all the terms and provisions hereof, and by signing below, Employee acknowledges receipt of a copy of the Agreement and agrees to abide by all of the terms and conditions stated herein.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

ATTEST:

Amy Bush   _Amy Bush_   _[signature]_   12-1-15

Employee Name (please print or type)    Employee Signature

WITNESS:    BARRETT BUSINESS SERVICES, INC.

Case 2:20-cv-01241-KJM-JDP   Document 7   Filed 09/17/20   Page 11 of 12

**Ed Regelbrugge**

Manager Name (please print or type)     Manager Signature

BBSI Employment Agreement 052018     6



# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of Sacramento, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 621 Capitol Mall, Suite 1400, Sacramento, California 95814.

On **September 8, 2020** I served the foregoing document entitled **JOINT STIPULATION TO SUBMIT MATTER TO BINDING ARBITRATION AND STAY PROCEEDINGS PENDING THE OUTCOME; [PROPOSED] ORDER THEREON** on all the appearing and/or interested parties in this action as follows:

| | |
|---|---|
| Jennifer Clingo<br>CLINGO LAW GROUP<br>633 West 5th Street, Suite 2600<br>Los Angeles, CA 90071 | *Attorneys for Plaintiff*<br>*Amy Bush*<br><br>E: jennifer@clingolaw.com<br>E: jennclingo@gmail.com |

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☒ **[by ELECTRONIC SERVICE]** – Pursuant to an agreement of the parties to accept service by electronic transmission, I caused the aforementioned document(s) to be transmitted by e-mail to the address(es) listed.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed **September 8, 2020** at Sacramento, California.

Alicia P. Malerbi                                                 By: */s/ Alicia P. Malerbi*
Print Name                                                                          Signature